UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: HCP SYSTEMS, LLC, | Case No. 18-11984-ja7 |
| Jointly administered with | |
| In re: HEALTH SERVICES, LLC, | Case No. 18-11985-ja7 |
| Debtors. | |
| MELANIE UKANWA, MD, MAYIMRAPHA COMPREHENSIVE HEALTHCARE, LLC, RICK CARDENAS, MD, RICK CARDENAS & ASSOCIATES, LLC, RITA TORRES, and | |
| Plaintiffs, | |
| v. | Adv. No. 18-01081-t |
| CRAIG DILL d/b/a Craig Dill and Associates, | |
| Defendant. | |

## OPINION

Before the Court is Plaintiffs' motion to remand this adversary proceeding to state court. The removing Defendant, who was the receiver of Debtor's assets pre-petition, objects on two grounds. First, he argues that Plaintiffs do not own the claim they brought. Second, he argues that Plaintiffs violated the *Barton* doctrine. The matter has been fully briefed and argued. The Court rules that the claim is estate property and that Plaintiffs ran afoul of the *Barton* doctrine. Remand would not solve these problems. Instead, the Court will give the bankruptcy trustee 30 days to file a motion to substitute as the plaintiff and for permission to pursue the claim.

## I. FACTS.[1]

In about early 2013, Rita Torres owned the majority of a business named Health Care Partners Systems, LLC ("HCPS"), which provided healthcare services to rural and underserved county jails and a state youth correctional facility in New Mexico. Leda Cook was a real estate broker at the time.

Ms. Torres and Ms. Cook met in connection with a real estate transaction involving HCPS. For reasons that likely are disputed, the two became business associates working for HCPS.

At some point after Ms. Torres and Ms. Cook began working together with HCPS, they formed HCP Systems, LLC ("Systems"). There is a dispute whether this entity is owned by Mr. Torres or else by both Ms. Torres and Ms. Cook.

Similarly, at some point Health Services, LLC ("HS") was formed. There is a dispute about the ownership of HS.

The disagreements between Ms. Torres and Ms. Cook became clear in or around April 2016, after which Ms. Torres purported to terminate Ms. Cook's association with Systems and HS.

In June 2016 Ms. Cook sued Ms. Torres in state court for fraud, equitable estoppel, breach of fiduciary duty, accounting, dissolution of partnership, unjust enrichment, breach of contract, and injunctive relief, commencing *Leda Cook v. Rita Torres, et al.,* cause no. D-202-CV-2016-03921, in New Mexico's Second Judicial District Court (the "State Court Action"). The action was assigned to Hon. Nancy Franchini. Although the gravamen of the complaint is directed against

---

[1] The facts are taken from the docket in this case or from Debtor's allegations and statements. The Court took judicial notice of the docket *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). In addition, some of the facts are taken from the Court's February 21, 2019, oral ruling in the main case on the trustee's Motion to Employ Special Counsel, doc. 54. The facts are found for the limited purpose of ruling on the motion to remand.

Ms. Torres, the Debtors and others are named as additional defendants. Melanie Ukanwa M.D. and Rick Cardenas M.D. are third party defendants.

On November 17, 2017, Judge Franchini appointed Defendant Craig Dill as the receiver for the Debtors and related entities. Defendant posted a $250,000 bond.

Debtors filed these chapter 7 cases on August 8, 2018. Yvette Gonzales is the chapter 7 trustee in both. A joint administration order was entered August 15, 2018.

On November 14, 2018, Plaintiffs filed a complaint against Defendant in state court, commencing *Melanie Ukanwa, M.D., et al v. Craig Dill*, No. D-202-CV-2018-08371. The action was assigned to Judge Clay Campbell. The complaint has 68 paragraphs relating to the Plaintiffs' interest in the Debtors and Defendants' actions taken as the receiver, but only asserts one cause of action:

> BREACHES OF DUTIES OWED TO ALL PLAINTIFFS
> 69. Dill, and his professional Corporation Craig Dill & Associates, Inc., jointly and severally committed the negligent acts described herein, which fell below reasonable standards set by the Court in its Order appointing Dill as receiver.
> 70. Dill's acts also fell below standards of best practices of receivers in general.
> DAMAGES
> 71. Dill's negligent acts decimated the receivership estates of HSLLC and HCP Systems, and failed in all respects to comply with the terms of the Court Order.
> 72. Plaintiffs have proximately suffered for the negligent acts of Dill in amounts to be determine at Trial.
> JURY TRIAL DEMAND
> 73. Plaintiff's demand a Jury Trial in this case.
> PRAYER FOR RELIEF
> WHEREAS, Plaintiffs demand damages according to New Mexico law, for harms proximately caused by Dill's negligent acts, wrongs or omissions.

(the "Claim"). Plaintiff's did not seek this Court's or Judge Franchini's permission before suing Defendant.

Defendant removed the action to this Court on December 7, 2018. Plaintiffs moved to remand on December 20, 2018.

II.     DISCUSSION.

A.     Standing.

The Court has a duty to confirm that it has jurisdiction over matters before it. *See, e.g.*, *PeTA v. Rasmussen*, 298 F.3d 1198 (10th Cir. 2002) (courts are obligated to ensure that there is an Article III case or controversy); *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272 (10th Cir. 2002) ("Neither the parties nor the district court addressed the question of plaintiffs' standing. Nevertheless, it is the responsibility of this court to raise the issue on its own to ensure that it has and the district court had before it an Article III case or controversy.").

The Court may *sua sponte* bring up standing issues. *See Rector v. City & Cty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing … raises jurisdictional questions and we are required to consider 'the issue *sua sponte* to ensure that there is an Article III case or controversy' before us.").

B.     Ownership of the Claim.

Having reviewed Plaintiffs' complaint, the Court concludes that the Claim is owned by the trustee, not Plaintiffs. This is true whether or not, pre-petition, the Claim was a derivative or a direct claim.

1.     Plaintiffs may never have owned the Claim. The gravamen of the Claim is that Defendant's negligence reduced the value of Plaintiffs' ownership interests in the Debtors.[2] Plaintiffs ask for a money judgment for, inter alia, the diminution in value.

---

[2] This is shown by allegations in paragraphs 29. (Defendant "destroyed the value of" Debtors); 40. ("HSLLC was appraised, by CPAs assigned to value the company, at over $998,000 prior to Dill's appointment"); 45. ("Dr. Ukanwa, an owner of HSLLC, is owed her share of the company's equity, estimated at over $325,000 for her one-third share"); 62. ("Ms. Torres, an owner of HSLLC, is owed her share of the company's equity, estimated at over $325,000"); and 68. ("Ms. Torres, principal owner of HCP Systems, is owed her 100% share of that Limited Liability Company as well, in an amount to be determined at trial.").

Under New Mexico law, a shareholder has no right of action for alleged harm to her corporation. In *Marchman v. NCNB Texas Nat. Bank*, 120 N.M. 74 (S. Ct. 1995), the New Mexico Supreme Court held:

> although the stockholders of a corporation suffer when the corporation incurs a loss, only the corporation may vindicate its rights. An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief.

120 N.M. at 81.

In additional to being shareholders, Plaintiffs also allege that they are creditors.[3] In *Marchman* the New Mexico Supreme Court held that creditors have the same standing problem as shareholders:

> The right of recovery for NCNB's wrongful acts, if any, is solely that of ANC; any injuries suffered by Marchman and MEI as creditors of ANC are derivative of injuries suffered directly by ANC.
>
> As the Fifth Circuit Court of Appeals has observed,
>> [I]t is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership.
>
> *Martens v. Barrett,* 245 F.2d 844, 846 (5th Cir. 1957) (footnotes omitted). Marchman, MEI, and the Estate may have suffered real harm as the result of NCNB's wrongful acts. The right of recovery, however, belongs exclusively to ANC.

120 N.M. at 83. Under *Marchman*, Plaintiffs had no direct cause of action against Defendant.

---

[3] *See, e.g.,* paragraphs 38. ("Dr. Cardenas is owed in excess of $90,000 in back salary and interest"); 42. ("Dr. Ukanwa took out a line of credit and lent HSLLC $38,500 from the line so that the firm could make payroll. The debt has not been repaid"); and 43. ("Dr. Ukanwa is owed back salary approaching $650.00 in unpaid wages and interest.").

2. <u>Post-petition, derivative claims become estate property</u>. The Claim could be viewed as a derivative claim, brought on behalf of the Debtors for the benefit of all creditors. This characterization avoids the *Marchman* problem and seems the likeliest scenario for a colorable claim. *See, e.g., North American Catholic Educational Programming Foundation, Inc., v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) (discussing the rights of shareholders and creditors to bring derivative claims on behalf of corporations); *Mukamal v. Bakes*, 378 Fed. App'x 890, 898 (11th Cir. 2010) (citing and following *Gheewalla*).

Such derivative claims become estate property once the corporation files bankruptcy, however, and may be pursued only by the trustee. *Pepper v. Litton,* 308 U.S. 295 (1939) (derivative claims become estate property upon a bankruptcy filing); *In re Ionosphere Clubs, Inc.,* 17 F.3d 600, 604 (2d Cir. 1994) (derivative claims are estate property); *Kennedy v. Venrock Associates*, 348 F.3d 584, 589 (7th Cir. 2003) (derivative claims are assets of the bankrupt estate).[4]

Whether the Claim is a *Marchman* claim or a derivative claim, Plaintiffs lack standing to pursue it.

3. <u>Substitution of the Real Party in Interest</u>. Under Federal Rule of Civil Procedure 17, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7017, the real party in interest should be given the opportunity to be substituted as the plaintiff. The Court will give the trustee such an opportunity.

B. <u>The *Barton* Doctrine and its Exceptions</u>.

---

[4] The same is true of general creditor claims like alter ego claims or state law fraudulent transfer claims. *See, e.g., Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 861 (10th Cir. 1986) (once a debtor files for bankruptcy protection, general creditor claims can only be pursued by the bankruptcy trustee); *St. Paul Fire and Marine Ins. Co. v. PepsiCo. Inc.,* 884 F.2d 688, 700-02 (2d Cir. 1989) (to the same effect); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1351 (7th Cir. 1987) (alter ego claims become estate property, pursuable only by the trustee, when the debtor files bankruptcy).

1. <u>In general</u>. Defendant argues that Plaintiffs commenced this proceeding in violation of the "*Barton* doctrine" and therefore lack standing to pursue it. The *Barton* doctrine, a federal common law rule, requires a party who wishes to sue a court-appointed receiver or bankruptcy trustee to obtain prior permission from the appointing court. The doctrine was named for the case of *Barton v. Barbour* 104 U.S. 126 (1881), which held:

> We therefore declare it as our opinion that when the court of one State has a railroad or other property in its possession for administration as trust assets, and has appointed a receiver to aid it in the performance of its duty by carrying on the business to which the property is adapted, until such time as it can be sold with due regard to the rights of all persons interested therein, a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the property in his possession is situated, based on his negligence or that of his servants in the performance of their duty in respect of such property.

104 U.S. at 136-37; *see also Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012) (quoting *Barton*).

The *Barton* doctrine has been widely adopted by state courts. *See, e.g., Asset Recovery Group, LLC v. Cabera*, 233 So. 3d 1173, 1176 (Fla. App. 2017) (*Barton* doctrine recognized in Florida); *Considine v. Murphy*, 773 S.E. 2d 176, 178-79 (Ga. 2015); *Lurie v. Blackwell*, 285 Mont. 404, 407 (1997); *Bertsch v. Eighth Judicial District Court*, 396 P.3d 769, 770 (Nev. 2017); *Torrez v. Edwards*, 107 P.3d 1110, 1112 (Colo. App. 2004). New Mexico recognizes the *Barton* doctrine. *See Mogollon Gold & Copper Co. v. Stout*, 14 N.M. 245, 248 (Terr. S. Ct. 1907); *Early Times Distillery Co. v. Zeiger*, 9 N.M. 31, 34 (Terr. S. Ct. 1897).

2. <u>The § 959(a) exception</u>. An exception to the *Barton* doctrine was enacted by Congress in 1887. The current version is found in 28 U.S.C. § 959(a):

> (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such

property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

As the Third Circuit explained in *In re Vista Care Group, LLC*, 678 F.3d 218, 226 (3d Cir. 2012):

> This provision, originally enacted in 1887, just six years after *Barton*, seems to have been in direct response to the concerns raised in Justice Miller's dissent in *Barton*. Criticizing the scope of the Court's holding, Justice Miller noted that the role of a receiver had expanded well beyond winding up the affairs of a defunct corporation and liquidating its assets, to in some situations, essentially running the company. *Barton*, 104 U.S. at 137–38 (Miller, J., dissenting). Justice Miller opined that it would be fundamentally unfair to require a party to obtain court permission to pursue claims against the receiver arising out of the receiver's operation of the business. *Id*. at 138. Such a system would render the everyday operations of the corporation "exempt[ ] from the operation of common law" and deprive potential litigants of the right "to have their complaints tried by [a] jury or by the ordinary courts of justice." *Id*. Rather, a party's only remedy against the corporation would be in "the hands of ... the court which appointed [the receiver]." *Id*.

678 F.3d at 226.

Despite the seemingly broad language of § 959(a), its scope is limited. In *Coen v. Stutz (In re CDC Corp.)*, 610 Fed. App'x 918 (11th Cir. 2015), the Eleventh Circuit stated:

> We have explained, however, that this limited exception 'is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store.'

610 Fed. App'x at 922; *see also VistaCare Group*, 678 F.3d at 227 (where a receiver is actually operating the business and the injury arose from operations, prior permission from the appointing court is not required); *In re J & S Properties, LLC*, 545 B.R. 91, 97–98 (Bankr. W.D. Pa. 2015) (quoting *Coen*); *In re Lehal Realty Associates*, 101 F.3d 272, 276 (2d Cir. 1996) (§ 959 "is not intended to apply to a breach of a fiduciary duty in the administration of a bankruptcy estate").

3. The *ultra vires* exception. In addition to § 959(a), a receiver loses the protection of the *Barton* doctrine if he takes actions beyond the scope of his authorized duties. *See, e.g., Teton Millwork Sales v. Schlossberg*, 311 Fed. App'x 145, 148 (10th Cir. 2009) (unpublished) (receiver

allegedly wrongfully took possession of another's property); *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013) (*Barton* doctrine does not apply if the receiver acts *ultra vires* by, for example, taking possession of property belonging to another).

Like § 959(a), the *ultra vires* exception is narrowly construed. *See, e.g., Satterfield*, 700 F.3d at 1236 ("claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives."); *In re DMW Marine, LLC*, 509 B.R. 497, 508–09 (Bankr. E.D. Pa. 2014) ("all actions for damages against receivers, with the possible exception of damage actions arising from the wrongful seizure of non-receivership property, are subject to the *Barton* doctrine and fall outside the "ultra vires" exception to the doctrine."); *In re United Tax Grp., LLC*, 2018 WL 1187395, at *5 (D. Del.) (the ultra vires exception is limited to seizure of non-estate property).

C.   The *Barton* doctrine applies to this proceeding.

1.   The doctrine and the intervening bankruptcy cases. Judge Franchini appointed Defendant as a receiver in the State Court Action. Normally, the *Barton* doctrine would have obliged Plaintiffs to obtain Judge Franchini's permission before filing suit.

Because Debtors filed bankruptcy before Plaintiffs sued, the analysis changes. On the petition date, supervision of the Debtors' estate transferred from Judge Franchini to this Court.[5] The premise of the *Barton* doctrine is that the supervising court should decide whether the receiver can be sued. The Court therefore holds that it, rather than Judge Franchini, should have been consulted before the Claim was brought. This conclusion is supported by Judge Weissbrodt's

---

[5] This date is subject to some debate because Defendant filed a motion to excuse turnover of the receivership assets. Had the motion been granted, Judge Franchini would have retained jurisdiction over them. The motion was resolved on September 26, 2018, when Defendant withdrew it. After that date, all receivership assets were in the bankruptcy estate, under the direction of the bankruptcy trustee.

decision in *The Billing Resource v. Federal Trade Commission (In re The Billing Resource)*, 2007 WL 3254835, at *20 (Bankr. N.D. Cal.):

> It is this exclusive grant of *in rem* jurisdiction that precludes the application of the *Barton* doctrine in this particular set of circumstances. *Crown Vantage* points out that
>> [p]art of the rationale underlying *Barton* is that the court appointing the receiver has in rem subject matter jurisdiction over the receivership property. As the Supreme Court explained, allowing the unauthorized suit to proceed "would have been a usurpation of the powers and duties which belonged exclusively to another court." (Citations and footnote omitted).
>
> *Crown Vantage,* 421 F.3d at 971. It is the unique situation here—where the exclusive *in rem* jurisdiction over the Commingled Funds passed from the Florida Court to this Court upon Debtor filing its bankruptcy petition—that eliminates Debtor's need to request leave from the Florida Court before suing Receiver in this adversary proceeding.

2007 WL 3254835, at *22. The Court agrees with Judge Weissbrodt that, once receivership assets are transferred to a bankruptcy estate, the state court no longer needs to address *Barton*.

    2. <u>The exceptions do not apply</u>. If the Claim asserted that medical services provided to Plaintiffs during the receivership fell below the standard of care, or that Plaintiffs' were injured in a waiting room or parking lot, the § 959(a) exception might apply. Because the Claim relates to Defendant's alleged breach of fiduciary duty to shareholders/creditors, causing a diminution in the estates' value, it does not.

    Plaintiffs' attempt to come within the *ultra vires* exception also fails. The Claim is "based on acts that are related to the official duties of the trustee." *Satterfield*, 700 F.3d at 1236. Plaintiffs claim that Defendant performed the acts negligently. Discharging official duties negligently, however, is not *ultra vires*.

D.    <u>Remand would not solve Plaintiffs' *Barton* doctrine problem</u>.

Judge Franchini is no longer the proper judge to decide whether the Claim may be brought. Thus, remand would not solve the *Barton* problem. Furthermore, remanding the proceeding would return it Judge Campbell, not Judge Franchini. Judge Campbell has never supervised the receivership estates. Although both judges sit in the same district, only Judge Franchini had the right (pre-petition) to grant permission to due Defendant. *See, e.g., In re Kashani*, 190 B.R. 875, 884–85 (9th Cir. BAP 1995) (debtors must obtain leave of the appointing bankruptcy court to sue the trustee); *Blixseth v. Brown*, 470 B.R. 562, 566 (D. Mont. 2012) (for *Barton* doctrine purposes, United States district court is different that bankruptcy court).

### III.  CONCLUSION.

The Claim is property of the estate, so Plaintiffs lack standing to assert it. Further, the Claim could not be brought without permission from this Court. Plaintiffs' motion to remand therefore will be denied. By a separate order, the Court will give the trustee 30 days to file a motion to substitute as the plaintiff and be allowed to proceed with the action. The motion should attach a proposed amended complaint. If no motion is timely filed, the proceeding will be dismissed.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 5, 2019
Copies to: counsel of record